UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKETING DISPLAYS
INTERNATIONAL,

        *Plaintiff*,

        v.

BRIANNA SHAW,

        *Defendant*.
_____/

Case No. 2:22-cv-12287

District Judge
Gershwin A. Drain

## ORDER GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [#38]

In this case concerning the validity of an employer/employee non-compete agreement, Plaintiff Marketing Displays International ("MDI") moves for a protective order preventing Defendant Brianna Shaw ("Defendant") from issuing subpoenas and other discovery requests to MDI's current and prospective customers. ECF No. 38. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter and will resolve the instant motion on the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated herein, Plaintiff's Motion is granted.

## I. BACKGROUND

This action arose before the Oakland County Circuit Court on September 2, 2022 when MDI filed a complaint against Defendant seeking to enforce a non-compete agreement. ECF No. 1. The agreement, which Defendant signed as a condition of her employment, stated the following:

> During his or her employment, and for a period of one (1) year after termination of his or her employment, Employee shall not, in any manner, directly or indirectly, (a) be employed by, work or consult with, engage in or participate in the ownership, management, operation or control of any Competing Entity that conducts its business within the Territory . . . The term "Competing Entity" shall mean a business engaged in the design, manufacture or sale of products and/or services that are in competition with MDI.

ECF No. 1-2, PageID.20. Defendant eventually left her job at MDI and began work for another employer. Believing that Defendant's new employment violated the non-compete agreement, MDI sued for an injunction to prevent her from working for her new employer for one year. The Court granted MDI's motion for a preliminary injunction on December 9, 2022. ECF Nos. 9, 10.

Defendant appealed the Court's order granting the injunction on January 14, 2023 (ECF No. 15), but the appeal was dismissed as moot because the one-year non-compete clause had expired. ECF No. 33. On remand the Court is left with the issue of whether the preliminary injunction was properly issued—whether Defendant's new employment violated her employment contract with MDI. As the Sixth Circuit noted in its Order, Defendant may recover damages, including reputational harms,

2

on a finding that the injunction was improperly issued, and MDI may recover attorney fees from Defendant on the opposite finding, per the terms of the agreement. ECF No. 33.

The parties are now engaged in discovery. At the most recent status conference, the Court ordered MDI to refile its Motion for Protective Order, which was pending during Defendant's appeal. *See* ECF No. 21. MDI seeks to prevent Defendant from contacting any of MDI's current or prospective customers because "1) customer opinions or beliefs are not relevant to or helpful in the determination of the issues in this case, 2) the discovery requests are disproportionate to the needs of the case, and 3) the requests have the likelihood of harming MDI's goodwill by bringing its customers into a dispute unrelated to them and potentially making them pick sides between the parties." ECF No. 38, PageID.604. The Court considers the motion below.

## II.   LEGAL STANDARD

Generally, the scope of discovery is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Nonetheless, the Court has wide discretion over rulings

3

related to the discovery process, as well as the scope of discovery itself. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). For purposes of discovery, relevance is construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 U.S. Dist. LEXIS 25000, at *13 (E.D. Mich. Feb. 25, 2013) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

"[T]his desire to allow broad discovery is not without limits . . ." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). When a party wishes to issue subpoenas, they must "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It is the Court's responsibility to enforce this duty and impose sanctions when it is violated. *Id.* Thus, the Federal Rules of Civil Procedure permit district courts to issue protective orders "in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Fed. R. Civ. P. 26(c)(1).

### III.   ANALYSIS

The remaining issues in this case are (1) whether MDI's non-compete agreement is valid under Michigan law, and (2) whether, if valid, Defendant breached the agreement by joining a "Competing Entity." *See* ECF No. 9,

4

PageID.292–297. MDI states that at the most recent status conference, Defendant's counsel "indicated that he believed that MDI customer depositions would be relevant to the issue of whether Miller Zell is a 'Competing Entity' under Shaw's Non-Compete Agreement, and whether the Agreement advances a legitimate competitive business interest." ECF No. 38, PageID.604. MDI argues that this potential discovery is not relevant to the claims and defenses in the case because "[w]hat customers think on these issues is not relevant or helpful." *Id.* at PageID.605–606. In response, Defendant contends that MDI's motion is premature because Defendant has not issued any discovery requests to third parties, meaning the Court cannot yet decide whether the discovery sought contravenes the rules. ECF No. 39, PageID.618. Further, Defendant argues that the information she seeks is relevant and would not be unduly burdensome or prejudicial to produce.

The Court decides whether the proposed discovery requests, and consequent potential evidence, are permissible in view of the purpose for which Defendant seeks to use them. *Cox v. CSX Transp., Inc.*, 887 F.2d 1086 (6th Cir. 1989) ("The relevance of evidence depends on the purpose for which it is offered."). As such, the Court believes that the motion is not premature and agrees with MDI that the discovery sought will not produce evidence relevant to resolving these issues. Accordingly, the Court will issue a protective order preventing Defendant's counsel from issuing subpoenas to MDI's current and prospective customers.

5

\*\*\*

Starting with the first issue, for the non-compete agreement to be valid under Michigan law, it must protect MDI's "reasonable competitive business interests" and be properly limited in scope and duration. MCL 445.774a(1). Reasonable competitive business interests include preventing the anticompetitive use of confidential information, protecting close contact with the employer's customers or customer lists, or cost factors and pricing. *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 677 (E.D. Mich. 2015) (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007)). Defendant argues that she "intends to show that MDI has no legitimate business interest in enforcing the non-compete." ECF No. 39, PageID.620. She posits that third-party discovery is highly relevant to this inquiry, specifically "whether they disclosed any of their trade secrets or confidential information to Shaw, and whether Shaw's work at Miller Zell had the potential to in any way interfere with their business relationship with MDI." *Id.*

These arguments distort the inquiry and illustrate why customer testimony is irrelevant. Relevant evidence is evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. If the evidence does not satisfy this standard, then it is not admissible. Fed. R. Evid. 402. And whether Defendant possesses trade secret or otherwise confidential information belonging to MDI's customers is not relevant to MDI's

6

interest in protecting its own confidential information related to or about customers. *See* ECF No. 40, PageID.645.

Defendant errs in treating MDI's confidential information as coextensive with the information possessed by its customers. But an employer's list of customers, contact with customers, and goodwill with customers are all protectable business interests that do not contemplate the confidential information possessed by those clients. *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d at 677; *Teachout Sec. Servs. v. Thomas*, No. 293009, 2010 Mich. App. LEXIS 2011, at *9 (Ct. App. Oct. 19, 2010) ("[A]n employee who establishes client contacts and relationships as the result of the goodwill of his employer's business is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure."). Thus, even if MDI's current or prospective customers can provide testimony that they never disclosed their own confidential information to Defendant, this evidence would have no bearing on the ultimate inquiry.

For this reason, it is also irrelevant how customers would testify on whether Defendant's work at her new employer would interfere with their relationship with MDI. The evidence Defendant proposes would support an argument that her position with her new employer does not, in fact, cause anti-competitive harm to MDI. However, in determining whether the non-compete agreement is a valid contract under Michigan law, the Court asks only whether MDI has a reasonable competitive

business *interest* supporting the agreement. In other words, when enforcing non-compete agreements "an employer need not wait for the actual harm to fall before seeking relief" because "[t]he point . . . is to prevent harm from happening before it occurs." *Michigan v. Sault Ste. Marie Tribe of Chippewa Indians*, No. 1:12-CV-962, 2013 U.S. Dist. LEXIS 188956, at *28 (W.D. Mich. Mar. 5, 2013) (reversed on other grounds). For this same reason, whether there may or may not be harm on the other side of the agreement is not relevant to this Court. What matters, simply, is whether the agreement itself is a reasonable means of enforcing its ends. To this inquiry, the testimony of MDI's customers is irrelevant.

      To the second issue, customer testimony is also irrelevant to whether, if valid, Defendant's subsequent employment violated the agreement's terms. MDI alleges that Defendant violated the non-compete by being employed at a "Competing Entity," which is defined in the contract as "a business engaged in the design, manufacture or sale of products and/or services that are in competition with MDI." ECF No. 38, PageID.603. On this, Defendant could certainly solicit testimony from Miller Zell, the allegedly competing entity, to help establish that it is not a competitor of MDI. Of course, Miller Zell will possess evidence on the products it designs, manufactures, and sells and on what services it provides. Contrarily, the value of MDI's customers opinions on what products either employer designs, manufactures, or sells or what services either company offers is, at best, specious.

8

Where such evidence may be produced from each employer directly, tangential testimony from customers of MDI will not make it more or less probable that the companies are competitors as defined by the contract. Further, to the extent customer opinions are marginally relevant, the Court agrees with MDI that the risk of harassing or annoying its customers with minimally important discovery substantially outweighs the potential value.

Thus, the Court will grant the motion. Of note, however, MDI has not defined or otherwise identified the "prospective customers" it seeks to prevent Defendant from deposing. The Court nonetheless finds that, for the inquiries discussed above, third party testimony from entities other than Miller Zell are not relevant.

## IV.   CONCLUSION

For the foregoing reasons, MDI's Motion for a Protective Order is **GRANTED.**

**IT IS SO ORDERED**.

Dated: July 15, 2024

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 15, 2024, by electronic and/or ordinary mail.
/s/Marlena Williams
Case Manager